Good morning, Your Honors. Thank you so much. I'm thrilled to be here, both in these hallowed halls and in front of all of you. Thank you for taking the time to hear from us. But mostly, I'm thrilled to be here because I love the opportunity to do some good problem solving. And what we have here is a very solvable, small problem that I am confident you guys will take the time to rectify for us. You're not guys. Thank you, Your Honor. What you need to know about this case, the basic facts, are that our client, the decedent Frank Williams, worked for many years out at the Michoud Assembly Facility at NASA. He worked an office job. He was an engineer and was exposed to friable asbestos at the facility and consequently died of mesothelioma. We filed a lawsuit on his behalf in the Civil District Court of Orleans Parish, which was removed to federal court by Lockheed Martin. We found ourselves up in Pennsylvania as part of the asbestos multidistrict litigation where our largest defendants, the ones which we felt had the most liability, those which were in charge of the premises and those larger suppliers, were all dismissed by summary judgment. Ultimately, those are the defendants' summary judgments that we would like to challenge on appeal. We believe that those were incorrectly decided by the MDL. Eventually, the court was – the case was remanded to the Eastern District of Louisiana where we dismissed the final defendants. Those defendants were much smaller. We didn't feel like we had good cases against them without the primary defendants. So we dismissed them with the intent that all of our business before the district court had been concluded. We had no intent at any time to refile or to re-litigate against those final few claimants. MS. HILLIARD-JOHNSON. So is it your position then – I'm over here. MS. HILLIARD-JOHNSON. Sorry. It's a little hard to see. I apologize. MS. HILLIARD-JOHNSON. Thank you.     HILLIARD-JOHNSON. I understand with so many of us asking questions. MS. HILLIARD-JOHNSON. Thank you. Of course.  HILLIARD-JOHNSON. It's daunting to see who the questioner is. MS. HILLIARD-JOHNSON. I appreciate that.  HILLIARD-JOHNSON. Is it your position that the district court erred when it did not specify in the original orders with prejudice? MS. HILLIARD-JOHNSON. It is my opinion that it – that the district court's order should have been with prejudice, that it was intended to be with prejudice, that even the district court intended it for it to be with prejudice. Both the district court and us representing the plaintiffs intended for that to conclude all of our business. And it would have been preferable, certainly, to – for the district court's order to have said, with prejudice, those specific words. MS. HILLIARD-JOHNSON. Later, when the district court entered another order following an appeal to the Fifth Circuit that purported to be – that was intended to be with prejudice, the district court said,       Yes. MS. HILLIARD-JOHNSON. Yes. MS. HILLIARD-JOHNSON. And I know that you said that you were going to have a rule 54 judgment. Do you think that the court erred in adding wiggle room language about if it's a claim that is not pending and that sort – you know, the wiggle room language? Do you think that it should have been a clean 54 order there also? MS. HILLIARD-JOHNSON. It certainly would have been helpful if it had said – if it had been more clear. But I don't think the fact that the word with prejudice did not appear in the first     MS. HILLIARD-JOHNSON. order, or the fact that there was wiggle room language, as you point out, in the second order, means anything different than what the district court intended and what we asked   HILLIARD-JOHNSON. Rule 54b only requires that the court find that there's no just reason for delay, and the court clearly found that. There wasn't any wiggle in that. The wiggle was in light of our original opinion in the first appeal, like, what can I say here? And trying to stay within the bounds that we had placed him under, which I understand.     He's not wanting to go to jail. He's not wanting to go to jail. He's not wanting to go to jail. But he didn't wiggle on the question of whether there was just reason for delay. MS. HILLIARD-JOHNSON. He did not. He was quite clear, and he was quite clear by virtue of the fact that he undertook issuing a second order. He believed that we were entitled to an appeal, that an appeal was timely, that it had been his intent to give us the ability to appeal before. And that all indicates that the initial order was with prejudice, even though it didn't  MS.       HILLIARD-JOHNSON. Yes. MS. HILLIARD-JOHNSON. Yes. MS. HILLIARD-JOHNSON. MS.    HILLIARD-JOHNSON. Okay. Is it your position that our panel was wrong, or that we need to change our en banc precedent? MS. HILLIARD-JOHNSON. It is my opinion that there should be an exception under a limited circumstance for MS. HILLIARD-JOHNSON. Why do you need an exception? Why not just apply a swope? MS.  Well, we could apply a swope. You're right. And swope. MS. HILLIARD-JOHNSON. It seems to me that you have a clear case under swope so long as you've got a clear, a clean 54 order. We can debate that separately. But if you have a clean 54 order, why is this, why don't you get the appeal?  HILLIARD-JOHNSON. Well, I'm happy for you to apply a swope in that manner and for you to find that the court still had jurisdiction under 54 and, to issue the second 54 order, and that when it did, that granted us appellate rights here, jurisdiction. The question, you know, my concern with relying entirely on swope was that you didn't, we didn't apply it the first time and were sent back.    Thank you. MS. HILLIARD-JOHNSON. Thank you. MS. HILLIARD-JOHNSON. I agree that swope doesn't apply. I think this justifies a narrow exception. MR. HOOKER. In other words, so long as we apply swope correctly, or at least how you and I seem to think may be correct, as long as we do that, we don't need to change anything.  HILLIARD-JOHNSON.   HOOKER. It doesn't allow the court to go back and forth. MS. HILLIARD-JOHNSON. We wouldn't need to change anything. If we were to apply swope in the fashion that you're reading it and in the fashion that I read it, I don't, I agree that we don't need to do that. But as you'll recall, under, I mean, under Rule 60, the district court retains jurisdiction to revise judgments. So there isn't any reason that the district court couldn't have issued a Rule 54B judgment after it had come up for appeal the first time. That's absolutely true. However, to the degree that you find that that were not true, you could make a very limited exception for this particular rule. MR. HOOKER. But if you just have a multiparty case, forget those cases. Hypothetically, you've got a multiparty case. MS.   MR. HOOKER. The plaintiff does a 41 dismissal of one defendant, just one defendant. Does the district court suddenly lose jurisdiction?  HILLIARD-JOHNSON. No, of course not.   Of course not. So I don't see why this is any different. MS.  I don't either. And that's exactly, Your Honor, that's, I'm sorry to interrupt. MS. HILLIARD-JOHNSON. Please go ahead and finish. MS. HILLIARD-JOHNSON. That's exactly why we continued to ask for the Rule 54B certification. MS. HILLIARD-JOHNSON. Okay.  HILLIARD-JOHNSON. Counsel, what you really want, just in practical terms, is to be able to appeal the summary  MS. HILLIARD-JOHNSON.  There were a couple.  HILLIARD-JOHNSON.  MS. HILLIARD-JOHNSON. I think there were.  HILLIARD-JOHNSON. Multiple summary, yes. MS. HILLIARD-JOHNSON.   HILLIARD-JOHNSON. But you don't, you're not trying to proceed on some other claim in the district court again or anything like that. MS. HILLIARD-JOHNSON. No. HILLIARD-JOHNSON.   HILLIARD-JOHNSON. Okay. And I have one more question, and then I'll try to be quiet. My question is, can you articulate what you believe is the best exception that you would have us adopt? You said you'd like us to adopt a small, you're happy with SWOPE, if we would, if we interpret it that way, but that you otherwise would like us to craft an exception.      MS. HILLIARD-JOHNSON. Okay. Thank you. MS. HILLIARD-JOHNSON. Thank you. MS. HILLIARD-JOHNSON. Is there a reason that this Court has not recommended that we make that exception? And is that based specifically on another circuit's approach?  HILLIARD-JOHNSON. Well, honestly, I think that, I know that this Court is reluctant to overrule Ryan, which would be, you know, a dramatic change from precedent. But based on Judge Haynes' good recommendation and her concurrence from before, I think that if the appeal court were to find that it did not have jurisdiction, there's no reason to make the specific exception that the district court retains jurisdiction over the case. So that way, someone still has jurisdiction, so that it's not caught in what she eloquently calls ghostly magic between the two buildings, which is, what we have here is this trap, which is so unfair to the party plaintiff, where there's nothing the district court can seemingly do to remedy the situation, and there's nothing the appellate court can do to remedy the situation, where, in truth, in our system, there are very limited ways in which a plaintiff loses their appeal rights. One of them is a knowing involuntary waiver, and one of them is failing to follow up on, you know, taking an appeal. HILLIARD-JOHNSON. It would be okay if we overruled Ryan. HILLIARD-JOHNSON. That would be fine also. HILLIARD-JOHNSON. Because, to me, as I said in my brilliant, in quotes, concurrence, I don't understand, since the question of finality, which is really the issue, 1291 says we need a final judgment to have an appeal. If I'm the district judge sitting there, and I have a case of plaintiff versus A and B, and A wins summary judgment, and B is dismissed with or without prejudice, what do I have left to do? Nothing. That case is over for me. That sure sounds like final. And then we can hear that. Now, the problem in Microsoft was, it really wasn't final because they had a deal that basically says it's still on the docket. That was a with prejudice in Microsoft, but it's still sitting there. And so that is not acceptable. But here you didn't do that. And had you gone back, so in my hypo of plaintiff versus A and B, if you went back and you wanted to bring B back, you can't just do it automatically. You would need permission from the district court to file an amended complaint, you'd have to have an application through us. So why not overrule Ryan? I know you're scared that we might not want to do that, and you want your client to get an appeal, but why not overrule Ryan? As the 11th Circuit has pointed out, Ryan, and I think some members of this circuit have pointed out, Ryan does provide some clear rules which can be helpful, and that's the only thing that would be holding on to it. There are many other clear rules that you could provide. Ryan need not apply to a multi-dependent case, correct? For instance, that would be a very good exception. That was going to be my question. I mean, I have a lot of sympathy for what Judge Haynes just said, and I will note that her brilliant concurrence said that my majority opinion was correct application of our precedence, the emphasis being our precedence. Now, would you draw a distinction between overruling Ryan as a decision and overruling the doctrine or adjusting the doctrine that has grown out of Ryan? Because I reread Ryan this morning just for fun, and you know, Ryan is a very different situation from the finality trap situation. Ryan does not involve two defendants. It doesn't involve party A being voluntarily dismissed and going on with party B. It involves this bizarre situation where parts of a complaint are dismissed and parts of the complaint remain before the district court. Seems absolutely correct to me on its own facts. So I think there's got to be a distinction between overruling Ryan and maybe adjusting the doctrine that has come out of Ryan. Would you agree with that? The doctrine that's come out of Ryan has created a situation where a plaintiff as here by virtue of the order of dismissals can wind up with no appellate rights whatsoever. In a situation where the plaintiff... Sure. I mean, that was the problem to me, is how the same document can be final in one building and not final in the building across the courtyard. Indeed. And... That's the thing that your counsel opposite has yet to really address. I look forward to hearing their thoughts. But let's get back to Ryan. If we were to adjust the precedent to not apply to multi-party defendants, tell us what that would look like. So forget the several claims case, and let's talk about the versus A and B case. Plaintiff versus A and B, A gets summary judgment, B gets voluntarily dismissed. Tell me about that. Well, the other circuits have adopted several different types of rules to deal with that. The probably easiest is that whenever the remaining cases are done, when the remaining claims are done or dismissed, those are considered to be final. That's probably the most clean one. There are others where the circuits have looked at the party's intent to determine whether they have resolved their business before the district court. Another has looked at if the party is willing to stipulate that they are done before that court, or even if they're willing to argue in front of a panel that they're done before that court. Those have all been acceptable reasons to create final judgment. That's not the first option. I think what you're saying is voluntary dismissal or any dismissal without prejudice is final. Right. Final as to what? Final as in order to create... But what is a voluntary dismissal final to? Jurisdiction, venue, merits? Jurisdiction in order to create appellate jurisdiction. It creates a final judgment under 1291. Judgment final as to? As to the merits? You dismiss a case, if a district court dismisses for lack of jurisdiction, but doesn't reach the merits, it is final as to jurisdiction. Yes. Same with venue, same with merits. A dismissal without prejudice can be refiled identically in the same court with not a single comma out of place. How is that dismissal in any remote way final? Well, in those jurisdictions, they're talking about multi-party cases where some of the claims have been dismissed by summary judgment and the voluntary dismissals are just the remaining claims in order to achieve appellate jurisdiction. So what the plaintiff is doing at that juncture, you're here in a multi-party case, you've lost some of your claims on summary judgment, you have a few remaining claims, the plaintiff is then presented with this question. And the question is, shall we perceive... ...if the intent was to dismiss with prejudice, what was the nature of that? Was that just a unilateral decision by the plaintiff to cut data on those claims and perhaps escape the finality trap to effect an appeal? Well, Your Honor, it wasn't to escape the finality trap, obviously, because we have fallen into it, apparently. But it was to move forward with the appeal, realizing that those remaining claims were not...could not stand on their own, or were not efficient to stand on their own. We were at a disjuncture with prejudice. And that's why in our request and in the Court's order, it says that our appeal rights were reserved, and that language was our putting into the motion and into the order, our intent. We are breaking from the district court. We have no claims left before the district court. We do not plan to refile. We are planning to go the appellate court route. And the district court was fine. Another very important point on all of this is that all of the cases that we're talking about where the question is whether the finality trap applies, in all of those cases cited by our opponents, they are all cases where the plaintiff's requested or stipulated to specifically dismissing without prejudice, so that the plaintiff was getting what they were asking for. They were asking for it to be dismissed without prejudice. Whereas here, we are asking for it to be dismissed with prejudice. We were very clear about that. Unfortunately, it doesn't say those magical words of with prejudice, but the intent in both the motion and the order are there. So the easiest thing for the Court to do would be just to rule that our intent in the document dismissed it with prejudice, rather than to read in the without prejudice presumption. If you file a case, you dismiss it without prejudice, how is that final? That case is final. You can't still have a jury trial on that case. The judge can't suddenly start sending out Rule 26 orders and holding pretrial conferences or whatever. There's nothing left to be done in the case. So its effect on a future case is a whole other question. But it may be that the statute of limitations is gone, et cetera, et cetera. But you would have to start over if you wanted to bring it. So that case is over. Case number, you know, 20-123 is over. If you want to bring 20-124, go for it. But that would be true with prejudice. You might have a ratio-con argument there. You might lose, but you could still file again. And people do that. Which brings up a great point here. If instead of taking the appellate route, if we had dismissed these claims with this if we had chosen to go into the district court and refile, I guarantee that we would be sitting across from our opponents here. And they would have been saying, you intended to dismiss with prejudice. You are done. This is race judicata. It is over. MS. GOTTLIEB.  MS. GOTTLIEB. Yes, ma'am. MS. GOTTLIEB. You were talking about the different methods that the other circuits use. And the third one you listed was stipulation. If this court hypothetically were to consider that route, you think that this record is sufficient that you have stipulated? MS. GOTTLIEB. In your papers below, your papers here, and your argument here today.  MS. GOTTLIEB. We fully intend not to pursue any claims before the district court. We never did intend to pursue them. We never did pursue them. We fully stipulate to the fact that we are only choosing the appellate route. We have—and for the purposes— MS. GOTTLIEB. If the court were to prevail against Taylor, Seidenbach, and McCartney— MS. GOTTLIEB. Yes, Your Honor. MS. GOTTLIEB. Let's say that we found a way to have jurisdiction, whatever that may be. And we ruled on the merits that the summary judgment was improperly granted. You go back to the district court against those two defendants, you're not going to bring back anybody else? MS. GOTTLIEB. Well, we do have— MS. GOTTLIEB. I understand the other three cases. I'm not talking about those. You're not going to bring back anybody that was not granted summary judgment? MS. GOTTLIEB. No, Your Honor. There is—I mean, there are—there is a pending case that was consolidated with this one, which has stayed separate from this. And that was never addressed in this appeal issue. MS. GOTTLIEB. No, I mean, I understand— MS. GOTTLIEB. But—and then—and then five appeals. MS. GOTTLIEB. —consolidated with Gottlieb, McCartney, and Taylor, Seidenbach here. We've got Lockheed Martin and some others in the audience. We don't have time for this. But as to the parties that were not granted summary judgment, that were simply dismissed whether it was with or without prejudice, you are not going to seek to bring them back? MS. GOTTLIEB. No, Your Honor. MS. GOTTLIEB. If you went back, if we sent you back—let's say we only undid the summary judgment on Taylor, Seidenbach, and McCartney, and not Lockheed Martin and the other folks, that's all you'd try, right? That's what you're saying. MS. GOTTLIEB. Our goal here is we believe that Pennsylvania law was applied in the summary judgment. Rather than Louisiana law, we would like to see that rectified. We would like to have an appeal on those summary judgments. That's our goal here. And that's our only goal. That has only ever been our only goal since the very beginning, which is evidenced by the fact that Judge LaMelle was willing to go to bat for us twice. He didn't give us one order to get us before you. He gave us two. So by virtue of the fact that he went back and extended himself to do this, I think suggests to you that all of our intent from the very beginning was to have these be done, have these be with prejudice, never appear before him again, come here in front of you, have the appeal.  GOTTLIEB. Only on the cases where summary judgment. MS. GOTTLIEB. Yes, Your Honor. MR. At the beginning in October or November of 2014.  GOTTLIEB. We asked for a Rule 54B certification following our dismissals, which were silenced. MR. I'm asking about the first one. So there's an order against your client on behalf of Lockheed Martin. You could have asked for Rule 54B certification then. Instead, you noticed an appeal. We dismissed and said you can either seek 1292B certification or 54B certification. And instead, you went this route of dismissals. So you had two different opportunities to do the 54B certification, including one where this court instructed you or your client that that would be an appropriate way to get a pill of jurisdiction. So I'm failing to see the trap. MS. GOTTLIEB. So what we felt urgently that we needed to do was resolve the claims, the few remaining claims. And we did that by dismissal. MR. You wanted to appeal the summary judgment on behalf of Lockheed Martin. MS. GOTTLIEB.  MR. That was the goal. It's in the notice of appeal. MS. GOTTLIEB. And then we did file the Rule 54B. MR. Much later after all of these. MS. GOTTLIEB. Just after the dismissal. Actually, quite not much later. We filed at that time. We filed the dismissals and then we filed two requests with the court to clarify that everything had been dismissed, a Rule 58 and a Rule 54. The court chose to enter a judgment under Rule 58 because the judgments had already been entered. So he felt that that was the most appropriate method to clarify that everything was dismissed with prejudice, ready to come up to the Fifth Circuit. MS. GOTTLIEB. Counsel, is it accurate that you filed your dismissals and tried to clean everything up in November of 2016? Is that correct? MS. GOTTLIEB. Yes, Your Honor.  GOTTLIEB. And then in February of 2017, concerned perhaps about a lingering thing, you filed your first 54B request. MS. GOTTLIEB. Yes, Your Honor. MS.  Which the court didn't rule on and said was moot.  GOTTLIEB. Yes. Instead, he filed because he responded to our Rule 58. MS. GOTTLIEB. Because he was granting other relief and he thought, well, we shouldn't say what he thought, but I guess ruling it moot, he thought that the 58 took care of it. MS. GOTTLIEB. It seems so. That's what it looks like to me, yes, Your Honor. So generally, my request here is, while I know it is hard to move a panel this large off of a history of rhyme, which has been long, though I think that that might be better overall, that is not required here. To give us justice, you could find that we have overcome the presumption that this was dismissed without prejudice. To give us justice, we could make this very narrow exception, a swope exception, where if the appeal court finds it doesn't have jurisdiction, then the district court retains jurisdiction for the limited purposes of clarifying that Rule 54B applies for giving us certification under Rule 54B. You could allow our stipulation here to be sufficient to create appellate jurisdiction. You could review the record for any intent or any indication that we have attempted to manipulate jurisdiction here, which in this case, you will find none. But that's another way that other sister circuits have dealt with this. But the truth is, even in the sister circuits that still say they rely on rhyme, they have all begun to narrow it in a way that the Fifth Circuit hasn't yet. So even the Second and Tenth Circuit have some limited exceptions to rhyme, which we don't. We are at this point still an outlier by being so heavily dependent and so heavily trapped by rhyme. What's your favorite rule? Which is my favorite rule? Well, I mean, you want to urge us to do something, and you've given us a whole bunch of different ways to do it. Do you have a preference, or you don't really care as long as we get you where you want to go? My preference is for my clients, of course. I do think that probably any of those that give clear guidance to the plaintiffs, so a stipulation or, you know, allowing the district court to keep... Would 54B, the rules that are on the books today, be clear guidance? Yes. Yes. Under the SWOPE exception, as we have discussed. Under the SWOPE exception, but other circuits' approaches, any circuits' approach that you think gives clear guidance? Yes. Well, I think that stipulating that the case is over is certainly very clear guidance. That would be under the Jewish People for the Betterment of West Hampton, under the Seventh Circuit. And that, you know, where the district court retains jurisdiction to craft a Rule 54B order if the appellate court finds that it does not have jurisdiction, I think, is probably the most simple. And I think having a simple rule in this case is the most effective. Thank you, Counsel. Thank you all so much. Good morning. I'm Daniel Caruso. I represent McCarty Corporation in this case. The I guess from watching the, well, I didn't watch a lot of it, but watching the impeachment hearings, there is, you can see the importance of framing an issue or framing a narrative when you make an argument in any case or any debate or anything. In this case, in their opening sentence to their brief, the appellates in this case say, is it right, correct, and proper that complex procedural devices should be allowed to permanently stand in the way of litigation access to the courts and the search for truth? And if you phrase it that way, there's a whole bunch of lawyers who probably would agree that, no, you shouldn't do that. But that's not the case here. There is no complexity to what went on in the courts below with regard to this matter. There's no complexity to the use of Rule 54. When a summary judgment is granted against you, you file for, you move the court for Rule 54 certification. And I know of no instances where judges have been reluctant to grant 54 certification. And certainly in this case, once the summary judges were granted against McCarty and Taylor signed back and whoever, Rule 54 was available. There's a Rule 60 that we all know about. That if you do, in fact, file for a motion to dismiss and then realize later on it was dismissed without prejudice, and you want to move to change it to with prejudice, you file a Rule 60 motion. You have a year to do it. Why isn't another viable option for a plaintiff who decides, we don't have a case against two or three defendants, cut them loose? It's in the interest of the system for those defendants to not keep running up attorney's cases that the plaintiff doesn't think they can win. Why shouldn't under the jurisdictional statute, once you dismiss with or without prejudice as to those defendants, it may not be an appealable judgment and that issue is not in front of us. It's a final judgment. It might not be appealable, but it's final for purposes of 1291. So we have a final judgment. Now the partial summary judgment becomes a final summary judgment. Where is that prohibited by anything in a statute or a rule? Well, as I understand, the interplay between 1291 requires a final appealable judgment. Only after the judgment being appealed. Appealed. Correct. A dismissal without prejudice is final. It may not be appealable, but it's final as to the parties, as to the parties that affect. Correct. Don't we then have the interplay between that rule that you just set forward and the fact that the Fifth Circuit has always told us that they do not. Well, we're here in bank. We can tell you something differently. Well. Where is it prohibited by rule or statute? That's one of the frightening things about this whole thing is that there is the dismissal of parties that you don't want to have in the case anymore because you have no particular liability. Why wouldn't they be dismissed with prejudice? Well, that's between the parties that got dismissed and the plaintiffs, it seems to me. It doesn't seem like the people who are not parties to that can fuss about whether that's an appealable judgment. It's a final judgment. You don't have standing, I don't think, to argue it's not appealable. It doesn't matter if it's appealable. 1291 just requires a final judgment as to the defendants you want to appeal. Well, actually, under the rules, I understand that once I've answered a lawsuit and somebody wants to dismiss my client, if they want to dismiss without prejudice, I have to agree to that. That's not what happened here. Her point is when they cut loose three defendants, the controversy between you and the plaintiff is still alive. That's correct. But you're totally relying on the fact that somehow you get the benefit of all these rules about finality and judgment simply because that was without prejudice. But between you and the plaintiff, you still have a live case. And it's final whether you've got co-defendants in the case formally or not. It's of no matter to your client. Well, the facts of the case we're in right now? I think so. Okay, that case, I don't have a live case. My client was dismissed. So you're concentrating on summary judgment? My client got summary judgment. So what you said is no appeal was filed. No appeal was filed. It's still alive. In a normal case, if it had just been Williams versus McCarty and you got summary judgment and they filed a notice of appeal, it would come up here and we would either affirm or reverse. And if we reversed, it would go back to the district court and you would have a jury trial and whatnot. Yes, ma'am. So what they're asking you is why doesn't that all still apply if you had three friends in the room and they were all let out the door? You were left hanging. You got your summary judgment. They were just sent home. Why can't we still come up to the Fifth Circuit and resolve whether the summary judgment was properly made? Because up until the time we've walked into this room today, the Fifth Circuit has told us that— I know what you're about to say, but it's non-bond court. Okay. One reason to go on bond hypothetically is to reconsider our precedents that may not make any sense, right? And the guy that's asking you this question is the one who wrote the opinion. Based on the question that you're asking me right now, certainly, if you want to say from this point forward a voluntary motion to dismiss without prejudice is plenty good enough, even though down the road those parties may be brought into other litigations. So it really isn't final between the parties, okay? And that's what the court recognized. And Ryan, when you were talking about what happens when you have a dismissal without prejudice, I don't have the position you have. And if you want to go that route, there's nothing I can do about that. It's not what we wanted. I mean, I want to be at the movies right now. That's all I'm saying. If you think you want to be at the movies. Our precedent is follow the statute, right, which says that we can have, we have jurisdiction of appealable final judgment. So, I mean, I would start there with what's the definition of a final judgment? I mean, for example, in the Supreme Court's case of Galboa versus Bank of America Corporation, where it said a final decision exists where a, quote, district court disassociates itself from a case. So if a district court says, I'm getting rid of these three guys, voluntarily dismissal without prejudice. Go away. I'm going to make final judgment as to this remaining guy. It's all over. There's nothing left to do. Why isn't that a final judgment? It is a. Nobody's saying appeal the guys who were let cut loose. That wouldn't make any sense. They were let loose without prejudice. That wouldn't make any sense. It's the guy who had the final merits judgment. Why isn't that a final judgment? I can't answer that question because I really don't know the answer to it. I do know what you. What would it be final to? What issue on which would it be final on? It's not, it's not the way the court, the courts, the courts have apparently recognized that it's almost like closing a case administratively. But I mean, you know, you've got a, it's final to the district judge who had the case and it's the case is closed. If we go on this scenario that we've been talking about. Let's imagine a lawsuit that's not yet been brought. Okay. Is that final? Obviously not. Right. When you dismiss without prejudice, aren't you in the exact same shoes as a suit that has not yet been brought? Neither seems final to me, just as a, by any sort of normal definition of the word final. The only difference. Yes, yes, that's correct. The only difference is, which is what the court recognized. I need to keep bringing up Ryan, but that's what was recognized by the court in Ryan is that the litigation among the dismissed parties without prejudice is not final as to them. It was only one defendant in Ryan and the plaintiff attempted to dismiss some claims without prejudice and pursue other claims against the same defendant. And we, you know, we don't necessarily have to decide that case today because here we have multiple defendants. All claims against some defendants were dismissed. All claims against your client remain pending. Were, I'm sorry, I missed the last part that you said. All claims, no claims against your client were dismissed. None. Well, I got to say. I meant in a dismissal, you got, you got a favorable here. They've, we've got some adjustments, yes, correct, correct. So Ryan is not on all fours. No, it's a different situation, but the principle of Ryan, which is court, we followed since 1978, which is the principle that's at stake here. The question that's being raised here is, do we throw that principle out and favor something else? We did not follow Ryan in Swope. We, we said Ryan is distinguishable. We said that, that this is different because you dismiss complete claims against defendants. We allowed a 54B certification, but it's different. It's not exactly the same. And I'm missing a question. I'm sorry. We don't necessarily have to, we could overrule Ryan. We don't necessarily have to, but the facts in Ryan are different. Well, it is the factual distinction, but in the facts of the case we have here, you had a straightforward motion to, motion of summary judgment with result of dismissal of several defendants. Then the plaintiff tried to create finality by dismissing three defendants without prejudice. And every time this went to the appellate courts, they kept saying, that's not a final appealable judgment. That's right. And we're here to revisit that. Okay. I just want to talk first principles, not... I guess the question that, I feel like the Pharisee in the temple trying to do with the laws, the rules, but, but the simple fact of the matter is, is that Ryan and his progeny create a bright line rule. Okay. Why are we here then? Because if it's so bright line... Well, we're here, we're here because in this particular case, the bright line rule of Ryan apparently was not followed. What the appellants are suggesting when they, when they suggest the other methods that the appellate courts use in some of these other various circuits, is to do away with that bright line rule and just create some type of subjective analysis by which the courts look at the appearance of the... Objective? I mean, let's say that in, that instead of our facts here, we had the case of plaintiff versus A and B and plaintiff won summary judgment against defendant A and then voluntarily dismissed plaintiff B. Would, I mean, defendant B, would defendant A not be able to appeal? Would it not be final? If, if he dismissed plaintiff B without prejudice? Okay, so plaintiff against defendant A and B. Plaintiff wins summary judgment against defendant A... So plaintiff wins, okay. ... and then voluntarily dismisses defendant B, is that a final judgment? When, when the, when the defendant B appeals, is that a final judgment? He voluntarily dismissed, defendant A wants to appeal. Okay. Is that a final judgment? Yes. And why is that any different from defendant A won summary judgment, defendant B was dismissed voluntarily by the plaintiff and plaintiff wants to appeal? Why is something final when the plaintiff, when the defendant wants to appeal, but not when the plaintiff wants to appeal? Because the issue that, the scenario that you just gave me, there was no issue between defendants A and B. There was no issue there. But did you have a counterclaim or a... Oh, I'm sorry. I'm sorry, I got too much. No, no, I had no counterclaim. Well, then I don't understand, because then you, then it wouldn't have been dismissed if you had a cross-claim, but if you didn't, then what, what is your, why are you able to argue that defendant B should not have been voluntarily dismissed? Well, if, if, if plaintiff A gets a, plaintiff A gets a summary judgment against my client and then voluntarily dismisses a co-defendant without prejudice, then I would argue that I had no issues with this other party. I, I'm, I'm not against him, I'm not, in any way. So I should be allowed, he cannot hold up my appeal that way. Everything about this case was in the hands of the plaintiff and the district court judge. Excuse me. Let's suppose this case happens, the dismissed defendant, the plaintiff does, different facts, the plaintiff does intend to file another lawsuit, sues them in state court for their own reasons, they prefer to be in state court, and they litigate in state court for five years. Does that mean the federal court judgment never becomes final? Which, which the, there was a summary judgment. Summary judgment. When did that partial summary judgment become final and appealable in your view? It becomes when somebody moves to a Rule 54B certification. A hundred years later? Fifty, twenty? I know of no time, I know of no time limit on it. It's never final without a, because 54B assumes it's not final. That's why you have 54B. So it would never become final. Well, Rule 54B, as I understand, and I'm not a member of the committee that writes these rules, but that, that rule was written to address a specific situation dealing with multiple parties and multiple issues and allowing parties to get to the court of appeals even though the rest of the case might be, might be behind in the district court. It serves a specific purpose. It always has served a specific purpose. In this particular case, it would have served the same purpose had it been used. Counsel, can I, can I? Let me see if I can raise you on this. What's the point of 54B if not to solve this problem? I'm sorry? If we were to change the rule, what's the point of 54B? Maybe we could just delete it. That, well, if you start, you know, my time is up. But if you change, there's no reason to change any of these rules, okay? The rules are clear and they're usable. They're not arcane and they create order and, and they do create finality and certainty in dealing with the issues of appeals of partial issues and parties in a multi-party, multi-issue case. Counsel, can I? My time is up. Counsel, it, we're trying to get you to engage on first principles and your, your first principle appears to be clarity. If the, if other circuits routinely acknowledge that a voluntary dismissal with prejudice is final and, and use Rule 54B successfully in that way, and so it's just as a clear of a rule, it's just a rule that's different, but it's clear across the board, how is that any less good of an application of Rule 54? Is there any other principle in your mind other than clarity? And why isn't clarity achieved with the other circuits' approach? Every circuit that you're talking about, in any decision that they've written, always in the decisions, set out the principle that these judgments that are, that are the kind of judgment we're talking about, where you have a, a motion to dismiss without prejudice and so forth, they're not final judgments. They've decided to end, to take another tact in handling that situation. It's final, just like Wright and Miller did. It's, I think maybe the issue is whether it's, is it final to the district court or is it final to the litigants? And it's not final to the litigants. That's the whole point of, of, of without prejudice. It always has been. Thank you. Thank you. Good morning, Your Honors. My name is Edward Lasuse, Jr., and I represent Taylor-Seidenbach in this case. Please excuse my voice. I'm a little congested this morning. But anytime you don't understand me, please let me know. I'll try and speak up. I would like to think my job is easy this morning, because I'm urging this court to continue to follow Ryan and his progeny, which has been in existence for 40-plus years. Although I am somewhat concerned hearing some of the questions that were posed here today, just maybe how easy my job is. Okay. Well, can you please explain how the same document is final in the building of, and we're physically here. You walk across that courtyard and you're sitting in the Eastern District of Louisiana building, and the judgment is final. But then when you walk over here into the John Minor Wisdom building of the Fifth Circuit, it's not final. Please explain that. Well, Your Honor, I would answer the question as follows. Obviously, we had the final judgment rule under 1291. And then, of course, that has to do that what it says is we've got to have final decisions. We've got to have finality. And then I would urge, and as a matter of fact, I believe it was Your Honor that mentioned the U.S. Supreme Court decision. So we're going up a little level now. I think we can all acknowledge that. The U.S. Supreme Court decision in Microsoft. And I hope, I cited Microsoft in my brief. I hope Your Honor has had an opportunity to read the entire case because it is somewhat instructional. Although it really dealt with class certification, it addressed. It was a dismissal with prejudice. Even. It would have had jurisdiction originally here if the defendant, other defendants, the non-Taylor-Seidenbach-McCarty defendants had been dismissed with prejudice. So what they said in that case was that wasn't even really a dismissal at all. That was a FACO because they agreed it's coming back. Well. Well, I would respectfully disagree somewhat with Your Honor in that even more so, you're correct, that was a dismissal with prejudice as opposed to this case, which was a dismissal without prejudice. Even a greater argument that there was no final decision involved. But in Microsoft, what happened, and speaking of manufacturing and engineering appellate jurisdiction, which is really what we're trying to prevent by these line of cases, Ryan, and 1291, they cut a little sod agreement. They said, we'll dismiss you with prejudice, but we're going to reserve the right if we're going to appeal the class certification. All bets are off, and now we can sue you again. That was after the court had ruled they couldn't appeal the class certification. So that was a direct effort to circumvent the district court. We have nothing like that here. The district court keeps saying, yeah, you know, if the appeals court will take it, I want them to take it here, here, and keeps handing it to us, and we keep punching it back. So how is this at all like Microsoft? My comment to that, Your Honor, is as a matter of fact, the Fifth Circuit, and credit to the Fifth Circuit, although I firmly believe courts should not be adversaries, the Fifth Circuit told the plaintiffs, hey, you need to do a Rule 54B certification. That was the opinion in the first appeal. And the plaintiffs still didn't catch on. Yeah, they went back and they got a 54B, and you're still arguing that it's not final. No, they did that later in time, Your Honor, and after. So to go back, I don't think you ever responded to Judge Haynes' question, which I think is well taken. How is it final in one but not final in the other? Why is it the answer that it's not final in either? Because the district court has literally decided nothing. Well, you know, it's final as a practical matter relevant to this lawsuit. What's been decided? When I think of final, I think I've made my decision. You can appeal if you want. You can ask somebody else, but I'm done. I'm not doing anything more with this case. Well, what's been decided? Because as I understand it, a dismissal without prejudice means that you can refile the exact same suit again, and nothing is precluded. There's no res judicata. The whole thing is completely open. It's the opposite of final, isn't it? I agree with Your Honor's comment regarding the dismissal without prejudice of those three defendants. You're correct, and the plaintiffs can refile against those three defendants. They would like to stand before this august body and say, oh, that's not our intent, but you'll notice when you ask our court to do. In the case of Plano versus A and B, when A is granted summary judgment and B is voluntarily dismissed, that case, case number 20-1234 is over. It's final. There's no, the district court can't do anything more. Can't conduct a jury trial. Can't conduct discovery. Can't call the parties in for a pretrial conference. It's over. If it was sitting on your desk as you're the district judge, what can you do with that case? And I'm sorry, Your Honor. I missed the very beginning of your statement. A dismissal. A was granted summary judgment. B was voluntarily dismissed. I'm the district judge sitting at my desk with this folder. Let's pretend the real folders. Back in my day, they had folders. It's sitting on my desk. What can I do to take this from open to closed, from pending to not pending on my desk? What can I do more? You mean as a judge? Yes, I'm sitting. The question is, is it final in my court if I'm the district judge sitting there with this case? Can I, what have I got to do more in this case? I don't think there's anything else for you to do. Theoretically, you could enter, you could do an entry of a Rule 58 judgment relative to the grant of motion for summary judgment as a judge. Does 1291 require a final or final decision? The literal language is final decision. Final decision of the district court. Final decision, plural. I'm sorry. What is the district court decided when it dismisses something without prejudice? What's been decided? As to that particular claim, essentially, as a practical matter, what it has decided is I no longer have jurisdiction over that claim.  No, I'm sorry. Yes, it would because there's a new lawsuit that's been filed with the court and now it's going to take its course under that new number and to hear whatever exceptions, motions, or trial on the merits as it runs its course. Exact same claim. That was dismissed without prejudice. Everything is preserved, right? The plaintiffs can make every argument they were going to make. Certainly, without prejudice, there has not been any final decision. There's no res judicata. It's without prejudice. There's been no final decision, I think what you said. Of course, that was the situation with those three defendants that were dismissed without prejudice in this particular case. Things can happen. For one thing, you couldn't just resurrect this claim, you know, poof. You would have to file, and this is true whether it's a dismissal with prejudice, summary judgment, anything else. You have to file a whole new lawsuit. You have to pay the filing fee. You have to get the defendant served. The defendant has to come in and they may have a statute of limitations argument now. They may have all kinds of arguments, but as far as that first case where I'm the district judge having granted summary judgment to A and I've decided to grant the voluntary dismissal that the plaintiff asked for S2B, what is left for me to decide? I'm done. And if no one ever does anything in the future, I'm still done. Big, big if. Yes, you're done. I would like to point out, when you asked plaintiff's counsel a few minutes ago her intent of whether or not to file, refile these lawsuits, you know, she didn't give you a direct answer to your question. Let me ask. She didn't say, no, we're not going to refile on behalf of these three defendants. Sir, as limitations run against the defendants who are voluntarily dismissed. I'm sorry. As limitations run against the defendants who are voluntarily dismissed. Your Honor, I don't know. I don't know what exceptions they might raise to prescription. I do know, for instance, Your Honor, there's still pending another lawsuit that they, speaking of their intent in filing and bringing in parties, they filed a separate statement. This is a friendly question. This court treats dismissals without prejudice as being with prejudice if limitations has run. Can they treat it? No, I'm not aware of any such authority that allows a court to convert. In pro se 1983 cases, if the court dismisses a case without prejudice, we treat it as with prejudice if limitations is run. I would defer to what Your Honor said. I just. There would be no, have I got it backwards? If I'm right, then there's no problem here because cutting loose those other defendants made that it's now a final judgment without dispute. Your Honor, I don't know how to comment other than you're kind of begging the question. I don't know whether or not there's any limitations to claims against those three defendants. I do know there's another pending lawsuit arising out of this very same cause of action, the alleged. I'm just bagging a red herring stinking across the floor. Counselor, could I ask a timing question? It's me over here. Yes, Your Honor. I'm a little perplexed by your answer that they didn't file the 54. Be right after the court suggested it, or in fact, I have my time on here. Maybe I'm wrong, but I thought they filed the 54 be during the timing of the second appeal. You know, there have been four. Which in February 2017, they filed their first 54 be. Isn't that correct? And then while the 54 be was pending, the Fifth Circuit dismissed their second appeal. And then in March, and in that order, the court mentioned the necessity of a 54 be. And then in March, the court. So right on the heels of the first time the court mentioned the 54 be as far as I can tell. Maybe I'm wrong and so help me. In March of 2017, the court, they filed a 58 also, and the court granted the 58 and then denied the 54 as moot. So that's immediately on the heels of the Fifth Circuit telling them about the 54 be. But they had actually, in fact, already filed the 54 be even before that. So am I wrong on that? Or is there? So I didn't understand your timing argument. My understanding is the dismissals without prejudice of those three defendants was in November 2016. Yes, sir. And then the appeal was in December. The second appeal was in December of 2016. And then in February, they filed their 54 while the appeal was still pending. And then in February, also, the court denied the 54, I mean, denied the appeal, dismissed the appeal because it said that they needed the 54 be and acknowledged that they had already acknowledged that they needed a 54 be. And then in March, the district court, instead of granting the 54 be ruled it was moot. Is that wrong? Is that a wrong chronology? I'm just trying to get help because I think what you, which I thought you told me, told us, I just want to see if I'm wrong on this. I was trying to follow your time on as best I could, your honor. Please excuse me. Other than it's my understanding that dismissals without prejudice were in November 2016 before before the rule 54 be. Yes, sir. Yes, sir. That's that's my understanding, too. Okay, so so it was. I'd like to return to Judge Haynes' typo, which is the simplest typo, I think, to illustrate this situation. You have Defendant A, you have Defendant B. You have summary judgment granted as to Defendant A. You have Defendant B voluntarily dismissed without prejudice. Okay. Now, under our precedent, as I understand them, in order to create a final judgment that is appealable with respect to Defendant A, there has to be a 54 B. Is that that is that your understanding of our precedents? That's what we applied in this case. In other words, standing here standing here today, I'm not because I'm not. These are not the facts that I'm dealing with. That would be something, quite frankly, I would I would research if I was if I represented if I represented that defendant that was dismissed. Said that in order to avoid the so-called finality trial, you get a 54 B judgment. And my question is, given that scenario, as I read 54 B, it is about entry of a final judgment as to one or more but fewer than all claims or parties. But how does 54 B make sense in that situation? There's only one party left. Your Honor, to address your question, if I was presented with that scenario and I represented Defendant A and I'm aware of Ryan, I'm aware of the progeny of Ryan, I'm aware of 54 B, you better believe, number one, the first thing I'm going to do is those facts I'm going to research very carefully. If there's any doubt in my mind, what I'm going to do is I'm going to wear a belt and suspend it. Guess what? I'm doing the 54 B out of an abundance of caution. Why does it make sense to apply 54 B in that situation? There's only one party left. Party B has been voluntarily dismissed without prejudice, not before the district court. Does it make sense? You're looking at it from a practical point of view, and when you say does it make sense, and of course, I've been trying to get to Microsoft, but unfortunately, I'm having great difficulty getting to it. The principles behind 54 B, 1291, Rule 60, Microsoft has said, the Supreme Court, that the whole purpose of 1291 is to guard against piecemeal appeals, goodness gracious, we've got four appeals in this case, total of four separate appeals, to protect the judicial system's capacity to administer justice. We want things to run smoothly. Appealing one part of the case while the other part stays behind the district court. We want to avoid that. When you have somebody who's been voluntarily dismissed with or without prejudice, there's nothing else in the district court. There's no piecemeal appeal. Well, actually, Your Honor, and unfortunately, that's where we get into the situation of we're trying to micromanage this case. Let's say what happens, we take this case on appeal, you rule on the summary judgment, you say the summary judgment was improperly granted, it gets remanded back to the district court, oh, well, guess what? We're back in the district court. We dismissed those three defendants without prejudice. Let's file an amended petition and bring them back in as defendants. Well, but... Well, and now we're playing the game of what if, and that's what I think 1291 was trying to eliminate. 1291 was saying we've got a rule, we're going to have a final decision, we're going to take care of everything at once. And then they said, by Rule 54B, they said, well, in some cases, if we want to permit an interlocutory order, we can bring in a 54B, and that's the proper way to do it. The rules even went so far as to provide for some mistakes. My mouth's getting dry now. How do we file it? I'm sorry. Thank you, Your Honor. If I may, Judge Duncan, answer that, the answer is, Rule 54B might help you take the one party on appeal, but if you didn't do it, I don't think you do, and if you don't do it in the correct order, you fall into the finality trap. Because if you don't have the 54B, and then you voluntarily dismiss the second party, do you have the final judgment under this exact order? In that scenario, you don't, right? We're walking, we're in the courtyard again. Why does the order matter? Well, I mean, I think that's the point. It doesn't matter in that circumstance, but if you, in this case, because there were remaining parties, it did matter. My question is, why should it matter, the timing of the 41? I don't think it should. I mean, I think that that's the prejudice to the plaintiffs. And while I was listening to you all ask questions about the principles and the purposes of these rules, we find ourselves at the intersection of three rules where there are sort of three guiding principles we're looking at, right? One is to prevent piecemeal litigation, which is no doubt important. One, though, which is the Rule 41 principle, which is to prevent prejudice to the plaintiffs. The reason that the court assumes that our case was dismissed without prejudice is because that's written in to prevent prejudice to the plaintiffs, where as inadvertently in this case, we are, you know. Well, has limitations run against those other defendants? Yes, Your Honor, I believe it has. I mean, Mr. Williams died in 2009. I know. And we first filed suit in 2008. They were, the parties were dismissed by summary judgment in 2014. So, I mean, it has been a long time coming. The voluntary dismissals didn't come until when? 2016. 2016. Yes, Your Honor. You wouldn't get the benefit of any kind of stay or whatever if you refiled. If you refiled those cases, it'd be like you had never filed them. And so you'd be facing limitations based on a 2000, certainly discovered, if the discovery rule applied, 2008. And I'm not aware of a statute of limitations on an ordinary tort that's longer than 10 years. No, Your Honor. I agree. It makes all plaintiff's attorneys nervous to say that, but there is, I don't have any reason at this juncture to believe. And, well, and so, the... They, those options would be enough because we attempted to take advantage of dismissing the remaining defendants with prejudice. That's what we were trying to do. That's what the order tries to say. That's what our motion tries to say. It does not say... Well, it's both. I mean, I believe in our case, you can decide this just based on the fact that it should not have been dismissed, designated dismissed without prejudice, because we intended it for it to be with prejudice. The court intended it for, to be with prejudice. We will stipulate... But you saw when the order was entered that it wasn't, because it didn't specify, and we know under Rule 41 where it doesn't specify, it's not. And so instead of clarifying it and getting the final decision to, that you could appeal, you instead just appealed anyway. Well, Your Honor... That's how we get back to what Judge Costa was just suggesting, which is not really a trap. It's just you went down the wrong road. Well, it turned out to have been the wrong road. We, at that point, did ask for both the Rule 58 and Rule 54 of judgment. When we realized that, you know, the prejudice issue, it does specifically say in the order that we were reserving our appeal rights, meaning... And you can't have both. We acknowledge that you can't both preserve, have appeal rights, and stay in the district court. So by virtue of the fact that we are going down the appeal path, we are abandoning the district court path. And above all, we are commanded that these rules are supposed to be applied practically and not technically. And in this case, we're falling into this trap of this technicality of whether we filed with prejudice or without prejudice, whether it was before the Rule 54B or after the Rule 54B. These are just technical problems that are denying a plaintiff justice when, you know, a very small alteration changes everything, and for other plaintiffs in the same boat, because we're not the only... Though it is a rare occurrence... It connects with Judge Oldham's question. You filed a proposed order when you first moved to dismiss Godfrey, CRS, and EAS. Is that right? Yes, sir. And your proposed order didn't specify with or without prejudice? It said we were preserving our appeal rights for the purpose of appealing. It did not say the words with prejudice. That's true. And that would have made things a lot easier. But, you know, we were making the distinction. We are not here before the district court anymore. That is a stipulation that we are finished with our business before the district court. Our business goes forward in front of the appellate court, which, as I said, Judge Lammel agreed with twice, three times, actually. You know, he wants to be in front of you guys. And, Your Honor, we attempted to put that in by saying that we were appealing. We could... The court is totally entitled to read into our intent that we overcame any presumption that this was without prejudice. And the purpose of the without prejudice presumption is to protect a plaintiff. And this rule has been flipped on its head in this case and instead is solely prejudicing the plaintiff. There is no benefit to anybody else. There would be no benefit to, in this case, for us to have dismissed without prejudice. There was no reason for us to do that. That's why we asked for it to be... That's your argument, counsel. Thank you. Thank you all so much. Court will be adjourned. Thank you.